Allen, J.
—It is claimed by the plaintiffs that the said assignment was made by the assignors with intent to hinder, delay and defraud their creditors, including the plaintiffs, and to prevent and delay the application of their property and effects, and the property and effects of the said firm, to the payment of the *165 Indebtedness to the plaintiffs, and that said assignment was and is fraudulent, null and void ; and that the said assignment is also illegal, fraudulent an devoid for the reason that the said surviving partners had no lawful authority, power or right to make the said assignment. The insolvency of the firm was admitted. The plaintiffs introduced no evidence on the trial, but rested their case upon the admissions in the several answers.
■ The question whether a general assignment made by the surviving partners of an insolvent firm for the benefit of creditors, with preferences, is, in judgment of law, fraudulent and void, is, as I understand, the principal question presented for decision.
It has recently been held by the general term of the supreme court in this department, in the case of Nelson v. Tenney,* that the survivors of a copartnership dissolved by the death of a partner have no power to make an insolvent assignment with preferences without the consent and concurrence of the representatives of the deceased partner. In that case, the court says : “ We are of opinion, upon a careful examination of the authorities, that a surviving partner has no power, without the consent and concurrence of the deceased partner, to make an assignment to a trustee for the benefit of the creditors of the firm and to create preferences among the creditors by such assignment; whether it can be done with snch assent is a question not now before us. The surviving partner, being a trustee for the settlement of the estate, as between himself and the personal representatives of the deceased partner, cannot pass his whole duty over to another trustee without the consent of such representatives. In disposing of this appeal, we are not called upon, and, therefore, do not pass upon *166 the question whether such an assignment is valid as between the surviving partners and the creditors of the firm.”
We are to consider, therefore, whether an assignment made with the assent of the personal representatives of the deceased partner is valid as between the survivors and the creditors of the firm and the survivors and the personal representatives of the deceased partner ; and, if we hold that such an assignment is valid, whether or not this assignment had such authority from the personal representatives of the deceased partner, Livingston, as the law, as laid down in Nelson v. Tenney, requires.
It is true that the firm of Burger, Hurlbert and Livingston was dissolved on the 1st day of September, 1884, by Livingston’s death, though the partnership may be said to have had a limited continuance for the purpose of settling the copartnership affairs, and until that purpose is accomplished. “ It is a very clear proposition that when a partnership is dissolved, it is not dissolved with regard to things past, but only with regard to things future” (Wood v. Braddick, 1 Taunt. 104). Upon the death of Livingston all the assets of the copartnership became vested in and belonged to the surviving partners, and they possessed the sole and exclusive right to their administration. The legal title was theirs, with all its incidents, and they were liable for all the debts of the firm.
It is contended on behalf of the plaintiffs, that the survivors have their possession and title, as trustees for the creditors of the firm, and that, being such trustees, they could not transfer the execution of their trust to another. It is true that the survivors of a partnership have been called, in some of the cases, trustees for the creditors of the partnership ; but there is nothing in the relation resembling a trust. The survivors have acquired the partnership property, and *167 have become liable for all the partnership debts. Their relation to each other is that of debtor and creditor, and no other. In Nelson v. Tenney (supra), the court says that et the surviving partners are no more trustees, in any strict sense of that term, for the creditors of the firm, than are any other debtors for their creditors.” In Knox v. Gye, L. R. 5 H. of L. 656, Lord Westbury says “ The surviving partner is often called a trustee, but the term is used inaccurately ; he is not a trustee either expressly .or by implication. On the death of a partner the law confers on his representatives certain rights as against the surviving partner and imposes upon the latter corresponding obligations. The surviving partner may be called, so far as ihese obligations extend, a trustee for the deceased partner, but when these obligations have been fulfilled or are discharged or terminate by law, the supposed trust is at an end.”
The surviving partners have, it is true, duties and obligations to the representatives of the deceased partner in respect to the management and application of the assets of the firm, and their proceeds, which equity recognizes ; these duties and obligations resemble a trust, but they do not create a trust relation of that strict character that would prohibit the assignment by the surviving partners of the assets of the partnership to a trustee for the benefit of the creditors of the firm, with preferences, with the approval and assent of the representatives of the deceased partner. As to any surplus after the payment of the partnership debts, the survivors would, without doubt., stand as trustees for the representatives of the deceased partner, to the extent of his interest. That the approval and assent before mentioned is necessary to a valid assignment, with preferences, seems to be decided by the cases cited below, and by the case of Nelson v. Tenney already quoted
*168 We are of opinion, therefore, that the survivors became- the owners of the co-partnership property, subject- to the duty to settle affairs of the partnership, - and their obligations to the estate of their deceased partner to the extent of his interest. The right to - transfer property is incident to the possession of the •legal title. That the survivors may do this in their . discretion, to pay the debts of the firm, in full or in part-, although preferences are created, has been decided in. Egberts v. Wood, 3 Paige Ch. 517; Loeschigk v. Hatfield, 51 N. Y. 660; Hutchinson v. Smith, 7 Paige Ch. 26 ; Cushman v. Addison, 52 N. Y. 628. .In Egberts v. Wood, the chancellor says (referring to preferences): “ The administrator has no interest in the .question as to what debts shall be paid first, in case the partnership effects are insufficient to pay the whole ; and the legal right being vested in the survivor, he alone has the right at law to determine the question.”
Authorized as the surviving partners are, by the settled law of this State, to dispose of the- partnership property with unrestricted power, to create preferences as they see fit, or to assign the whole of the partnership directly to a creditor in payment of a debt, it would seem to follow that a court of equity would sustain a transfer of the whole property on a trust that it should be distributed by a trustee, provided such transfer is made with the assent of the personal representatives of the deceased partner.
There are two cases in the reports of this State which hold that the surviving partners of an insolvent firm have the power to make a general assignment for the benefit of creditors, with preferences, with the .consent of the representatives of the deceased partner: .and I have not been able to find any case in our courts .which maintains the contrary doctrine. In Egberts v. Wood, 3 Paige Ch. 517 (which was a case where one of the surviving partners made an assignment with *169 preferences with the consent of the other survivor and the assent of the administrator) the chancellor says % u If the partners, after a voluntary dissolution of the firm, may give such preference, I see no reason which would prevent the surviving partners, upon a dissolution of the firm, by the death of one of the members thereof, from giving a similar preference, with the consent of the personal representative of the decedent.”
In Hutchinson v. Smith, 7 Paige Ch. 27, the vice-chancellor says : 66 As surviving partner he (Phelps) had a legal title to the partnership effects. And in equity he is considered a trustee to pay the partnership debts, and to dispose of the effects of the concern for the benefit of himself and the estate of his deceased partner. Clothed with the legal authority to dispose of the partnership effects, it follows that the exercise of that authority will be sustained in equity, if the disposition be for the common benefit of himself and the estate of Ms deceased partner. This principle is established in the case of White v. Union Ins. Co., 1 Nott & McC. 556, where the assignment made by a surviving partner was held valid.” The vice-chancellor’s decision in the case was affirmed by the chancellor.
It is true that the facts upon which these cases were decided occurred prior to the revision of the statutes in 1830; and in the latter case the chancellor calls attention to that fact; and, while sustaining the right of a surviving partner to make a general assignment, with preferences, at common law, is inclined to think that the principles adopted by the Revised Statutes in reference to preferences in the distribution of the estate of a deceased person, and the statute depriving insolvent debtors, the benefit of the insolvent laws, where they have given' preference after insolvency, ought to be applied to surviving partners who, being *170 insolvent, attempt (even with the consent of the personal representatives of the decedent) to make a general assignment of the property of the partnership for the benefit of favorite creditors, to the exclusion of others whose claims are equally meritorious. Notwithstanding the doubt expressed by the' chancellor in this case, I do not understand that it is claimed on the part of the plaintiffs that the statute which prescribes the order of the payment of the debts of deceased persons, or the statute in relation to the discharge of insolvent debtors, has any application to general assignments for the benefit of creditors.
We come now to consider whether or not this assignment was made with the knowledge, consent and concurrence of the representatives of the deceased partner, Livingston. Healey and Davison were named in the will as executors. Mr. Davison never qualified. Healey joined in the execution of the assignment as one of the assignors, and by so doing gave his express assent to it. In Hutchinson v. Smith (supra) the vice-chancellor says: “ Cuyler, one of the defendants, is both assignee and administrator. His assent is therefore presumed.” Mr Healey, moreover, has testified that at the time of making the assignment he knew he was appointed executor under Mr. Livingston’s will, and that he approved of the assignment. He has also testified that Davison, the executor who did not qualify, advised and approved of the assignment. Healy, afterward, on the probate of the will, qualified as executor, and has answered in this action, defending the assignment.
It is claimed, that as Healey had not qualified at the time the assignment was executed, and was not executor, he had no power to concur in the assignment. Even if that is so, this approval of the assignment, being within his authority if he had been qualified as executor, the letters testamentary would relate back *171 to the death, of his testator and legalize Ms intermediate acts.
In these facts, I think there is sufficient to show that the assignment was made with the consent and sanction of the personal representatives of the deceased partner. I do not think that the statute (2 R. S. 71, § 16), presents an obstacle to this assignment, as claimed by the plaintiffs. Mr. Healey’s act in executing the assignment was as assignor, not as executor. All he did as executor was to approve of an assignment by the survivors of an insolvent firm. It was not in his power, as executor, to dispose of any part of the property embraced in the assignment, or to interfere with it, for the reason that he had not, as executor, any title to or possession of any of the property named in the assignment. The assets of the partnership passed to the survivors on the death of Livingston.
It is further claimed on the part of the plaintiffs that the assignment ought not to be upheld by the court on account of the preferences contained in it. Voluntary general assignments by failing debtors for the benefit of their creditors are authorized by law, and, even when preferring individuals or classes among the beneficiaries, are valid. It is true that preferential assignments are not favored by the courts, but the law tolerates them. There is no evidence in this case tending to show that any fraud was intended by the assignors in creating the preferences.
I do not think the assignment is invalid, because it authorizes the signing of the partnership name to checks, drafts, etc., because, by the terms of the assignment, this can only be done when it is necessary to carry into effect the object, design and purpose of the trust. This power can only be used, therefore, in the interest of the estate and of the creditors.
For the reasons above stated, I think the defend *172 ants- are entitled to judgment that the complaint be dismissed on the merits, with costs.
II. December, 1885.
Upon appeal by the plaintiffs to the general term,* the judgment of the special term dismissing the complaint was affirmed upon the opinion of the court below, all the judges concurring.
Note on the Rights of Surviving Partners, and Representatives of a Deceased Partner.
The old doctrine that joint owners, as distinguished from, owners in common, or owners in severalty,, held only, one single and indivisible title, so that when one died the entire title remained in the others, was not wholly acceptable to commercial enterprise; and the custom of merchants to acknowledge the claim of the representatives of the deceased joint owner, came, in time to be recognized by the common law. But the custom of merchants did not reject the powers conferred by the common law doctrine of survivorship, but only the beneficial right of the survivors to engross the "entire property. Hence the legal title is in the surviving partner or partners for the.purpose of liquidation and distribution.
This power, it will be seen below, considered as a power in this light, is nearly unqualified. The surviving partner may not only retain possession of all the assets, sell them, mortgage them for partnership debts or use them to pay partnership debts, but he may recover their possession even from the very executor of the deceased to whom he is to pay a share when recovered.
Some difference of opinion has been expressed as to how the position of the surviving partner is best defined. Lord Westburv, in Knox v. Gyc, L. R., 5 II. of L. 656, said that he was owner of the assets both at law and in equity. Lord Hatherley, in a dissenting opinion, denied this, and said that Me was a trustee.
The latter is the American doctrine—not, indeed, in the technical sense of his being an appointed trustee-under an .express trust; but the foundation of the respective rights of the survivor and che representatives of the deceased, is in the fact that equity, and now also the law, holds the survivor to the fiduciary duty and liability of a trustee, and aEords the beneficiary the remedy of a cestui que trust, for the protection of his beneficial interest.
*173 Lord Westbury’s dictum is nothing more than an emphatic protest against regarding the survivor as a trustee within- the rule that the statute of limitations did not ran against a trustee. In condemning what he regards us a misapplication of the word “ trustee,” he goes to the other extreme of denying that there is any fiduciary-relation. See also Taylor v. Taylor, 28 L. T. R. N. S. 188; Bush v. Clark, 127 Mass. 111; Dayton v. Bartlett, 38 Ohio St. 357, 361.
The relation is doubtless peculiar; but for the substantial purposes of equity it is fiduciary. It is true that the survivor has control, and the right of action, exclusively; but only for the purposes of settlement; and it is only so long as he is not delinquent in duty that equity agrees with the common law in treating him as absolute owner. In this he is no more absolute owner than a trustee of an express trust in lands under our statute, in whom the entire estate, legal and equitable, is declared by statute to be vested ; a declaration which docs not in the least detract from the fiduciary character which he bears.
The most recent cases under our own law may conveniently be summarized in the following order :
I. General Rights and Duties of the Surviving Partners .............................................. 174
A. As to Personal Property....................... 174
B. As to Beal Property .... ..................... 177
C. Bight to Compensation........................ 178
II. General Liability of Surviving Partners to Account. 179
A. In Equity................................. 179

B. In Surrogate’s Court when also Executor or Admin-

istrator ........................ 181
III. Consequence of Continuing Business without Consent
of the Deceased .... ............._________....... 182
A. Belations between Survivor and Deceased.....____ 182

B. Belative Bights of Deceased and Subsequent Credi-

tors ..... 185
C. Liability of Executor who Consents......... 187
IV. Continuing Business with Consent of the Deceased ... 187

A. General Validity and Effect of Provision for so

doing.............. 187
B. When General Assets are not liable.............. 189
C. When they are....____..... ................. 190
V. Rights of Partnership Creditors against the Assets. . 191
VI. -against the Estate of the Deceased............. 192
A. In general...................... 192
B. What is and what is not a Belease.............. 195
*174 VII. Right on Representative on Deceased against Partnership Debtors..................................... 196
I. General Rights and Duties op the Surviving Partners.
A. As to personal property and chases in action.
An action was brought by the assignee of a judgment which was part of the partnership assets, and which had been assigned to him by the surviving partner. It was held that the surviving partner had the right to assign; that he is the real party in interest in respect to a demand owned by and due to the firm, and that the debtor cannot, when sued by the survivor or by the party claiming under him, object that the representatives of the deceased partner were not made parties with the survivor. Daby v. Ericsson, 45 N. Y. 786.
A partner during the existence of the firm drew a check in the name of his partner on money credited to the individual account of such partner, but claimed as belonging to the partnership, and had it transferred to a partnership account. After his partner’s death he drew a check signing the name of the firm. In Illinois the holder of a check can sue the bank on which it is drawn. The bank refused to pay the check, claiming that the money, even if a- partnership existed, was individual property of the deceased, and that it had a right as an individual creditor of the deceased to share in its distribution; moreover, that the survivor had no right to draw it out after death, by check signed in the partnership name. It was held that the question whether the money was partnership property or not, was a question for the jury, and that if they found it to be so, the surviving partner had not exceeded his rights. Commercial National Bank *. Proctor, 98 111. 558.
The executor of a deceased partner received in installments from a savings bank,-money which stood in the name of the deceased, but which belonged to the firm. He paid over half of each installment, except the last, to the surviving partner. In an action brought by the latter against the defendant individually to recover the whole of such last installment, it was held that the action would lie, as the survivor was entitled to the assets ; that the defendant could not shelter himself behind his representative capacity. Sweet v. Taylor, 36 Hun, 256; see, however, Stanberry v. Cattell, 55 Iowa, 617. In McKay v. Joy (Cal. 1886), 9 Pac. Rep. 910, it was held that, although the surviving partner is entitled to continue in the possession of the assets, yet when they have been taken possession of by the administrators of deceased, the claim must be presented to the administrator for allowance before an action can"be maintained (§§ 1493, 1500, Civ. Code. Compare Manuel v. Escolle, 65 Cal. 110).
*175 The surviving partner has the right to maintain a bill in equity to rescind a sale of bonds made to the partnership, and for an accounting, ■without joining the representatives of the deceased partner. Bischoffsheim v. Baltzer, 20 Fed. Rep. 890.
It was held in an action which was brought by a judgment creditor of a partnership to test the validity of a deed of trust in the nature of a mortgage, executed by the sole surviving partner after the death of his copartner to secure the payment of a partnership debt, that where no fraud is proved, a sole surviving partner has the right to give such preference. The judgment creditor in that case had issued execution, but the trust deed had been executed before such execution had been recorded. Bohler v. Tappan, 1 Fed. Rep. 469; S. C., 1 McCr. 134. Compare Allen v. National Bank, 6 Lea (Tenn.) 558.
A note was made payable to the firm and a power to confess judgment in favor of the firm or assignee was given. A note had been signed by one of the partners describing himself as the successor to the firm. On appeal by the debtor from a judgment in favor of the assignee, the court held that as the decision might have been founded on the fact that the partner who signed was the surviving partner, and as, if such were the fact, it was of no importance how he described himself, in the absence of evidence to the contrary, the finding of the court below could not be disturbed. Johnson v. Berlizheimer, 84 Ill. 54.
A bill in equity was brought by the surviving partner against the representative of the deceased to compel an assignment of a patent which had been taken by deceased in his individual name, but for the benefit of tile firm. It was provided in the partnership articles that in case of decease of defendant’s testator, one of the plaintiffs should be sole business manager. On appeal from a judgment sustaining a demurrer, the court held that an equitable cause of action was set out; that even if the intention of the provision making plaintiff business manager was to continue the business, this did not make the defendants partners, or give them any right to take part ill the management. The defendants had, therefore, no right to the patents, and as, owing to the peculiar nature of the property, the defendants might, as long as the patents stood in their name, take away all benefit of the firm by assigning the patents, there was a sufficient ground for a court of equity to direct the assignment to the surviving partners. Berolzheimer v. Strauss, 51 Super. Ct. (J. & S.) 96.
It was incidentally said, in an action where the executor of the deceased partner sought to make the deceased account for profits on certain patents belonging to the partnership, that the surviving part *176 ner is not allowed to divide the property in specie or take it at a valuation, or have its value determined otherwise than by sale. Freeman v. Freeman, 136 Mass. 260. See Moore v. Huntington, 17 Wall. 417.
Where a surviving partner, after the partnership affairs were settled, sought to maintain a bill in equity against the administrator of the deceased on account of the discovery that the deceased partner, during liis lifetime, received money belonging to the partnership, held, that there was no trust or equitable lien in his favor on property in the hands of the administrator; and that when the estate of the deceased was insolvent, Ills only remedy was to share pro rata with general creditors,* Nor did he have any lieu on account of the fact that funds belonging to the partnership, which had been in the hands of a third person, had, after dissolution, been paid to the administrator in pursuance of an award. White v. Chapin, 134 Mass. 230.
A surviving partner, the firm being insolvent, made an assignment, preferring some of the creditors. A creditor not so preferred brought a suit against the partnership and 'attached some of the property assigned. In replevin by the assignee to recover possession, —Reid, that a general assignment by a surviving partner, by which creditors are preferred, is Void as against the non-preferred creditors, and that whenever such insolvency appears from the testimony the court will refuse to enforce the assignment, whether the action be legal or equitable. The court placed its decision on the ground that the surviving partner is a trustee for all the creditors, and that, such being his position, he-is not permitted to sacrifice the interest of one by favoritism shown to another. Salisbury v. Ellison, 7 Colo. 167, 303; S. C., 2 Pac. Rep. 906.
See also the recent New York case of Nelson y. Tenney, 36 Run, 327, where the court comes to the same conclusion, but on different grounds. See to the effect that the surviving partner may charge the partnership assets by way of security for a debt owing at time of dissolution, In re Clough, 55 L. J. Ch. 77.
In California, the surviving partner can collect a debt which the deceased owed the partnership, only after having ascertained whether the other partnership assets will pay the partnership debts. Painter v. Painter (Cal. 1886), 9 Pac. Rep. 450.
See to the effect that a surviving partner cannot, by any act or acknowledgment, revive a debt of the firm, so as to bind the estate *177 of the deceased, if the debt is otherwise barred as to him, Espy v. Comer, 76 Ala. 501. As to right to close up, Milner v. Cooper, 65 Iowa, 190.

B. As to Beal Property.

A surviving partner conveyed by deed all the property of the firm, including real estate bought with partnership funds and held for purposes of the partnership, in trust to pay creditors. The trustee accepted the trust. The trustee brought an action against the representaiives of the deceased partner, to compel them to convey the legal title vested in him by the will of the testator. Held, that the interest of the surviving partner in the real estate of the firm is not merely a lien but an equitable interest; that for the purpose of paying creditors it is considered as personal property, and as such passes under the control of the surviving partner; that he has the right to sell it; and that the purchaser is entitled to ask the aid of a court of chancery to compel the person holding the legal title to convey it to him. Shanks v. Klein, 104 U. S. 18.
A surviving partner executed a mortgage on partnership property to a partnership creditor, whose claim liad accrued before the dissolution, for the purpose of getting an extension of time for the payment of a firm debt. In an uciion to foreclose, to which the executor of the deceased was made a party, it was held that the latter could not set up as a defense that the surviving partner had no power to bind the estate of the deceased by giving such a mortgage. Even if, as between the estate of the deceased and the survivor, the giving of such a mortgage was unauthorized, and it was void as to the the estate, yet the court would enforce the claim of the creditor as against such estate for the reason that the claim was against the copartnership, and the survivor had made an ehort to devote the partnership property to partnership uses. Van Staden v. Kline, 64 Iowa, 180; S. C., 20 Northw. Rep. 3.
Where an executor of the deceased partner, who was also the surviving partner, after settling all the affairs of the partnership bought himself certain real estate belonging to the partnership at a valuation, it was held in an action brought by the heir of the deceased to have a person, to whom the laud had been transferred, declared a trustee, and for an accounting, that, as between the surviving partner and the heirs of the deceased, the property was real estate, and that, therefore, the provision of the Revised Statutes of Wisconsin which declared sales of real estate made by executors or administrators to themselves absolutely void, applied. It was also held, that the purchaser acquired no better title, as he was chargeable *178 with notice that in the deed to his grantor the latter was described as a surviving partner. Martin v. Morris, 62 Wisc. 418; S. C., 22 Northw. Rep. 535.
A surviving partner brought an action for trespass, and defendant demurred on the ground that the representatives of the deceased were not joined. Held, that, as it appeared that the estate was not settled and the representative of the deceased had not been let into possession, the exclusive title was vested in the surviving partner. The court does not pass upon the question what the relations of the parties are, after the debts are paid. Pfeffer v. Steiner, 27 Mich. 537. See also Gillett v. Gaffney, 3 Colo. 351. See Andrew v. Brown, 21 Ala. 437.
Leaf’s Appeal (Chicago Leg. Adv., Jan. 6, 1885), is a case as to the effect of an agreement in partnership articles that the real estate of the firm shall be considered as personal property.
See also the recent Ohio case on ' the title to partnership realty, of Page v. Thomas, 1 West. Rep. 21; S. C., 1 Northeastern Rep. 79, and articles by Guy C. H. Corliss in 32 Alb. L. J. 284, 304, 326. On the question how far an heir-at-law is bound by a judgment against the executor of a deceased partner and the surviving partner upon a bill filed to subject the partnership land to the satisfaction of the judgment. See Logan o. Greenlaw, 25 Fed. Rep. 299, and note.

A. Right to Compensation.

The general rule is that the surviving partner is not entitled to any compensation for closing up the affairs of the partnership.
But where, in view of the best interest of all parties and with the consent of the administrator, the business had been continued for some time, the surviving partner was held entitled on final statement to charge compensation. Schenkl v. Dana, 118 Mass. 236; see also Berry v. Jones, 11 Heisk. (Tenn.) 206; O’Neill v. Duff, 11 Phila. (Pa.) 244.
On the dissolution of a firm of lawyers, by death of one partner while there were several suits in which the firm was employed pending, a contract was made between the executor of the deceased and the surviving partner, whereby, in consideration of a certain sum, the representative of the deceased agreed to relieve the surviving partner from all claims of the estate growing out of said business. In an action for specific performance, brought by the surviving partner, who had paid the money, it was held that even if the general rule that the surviving partner had no right to charge for closing up the estate was applicable to legal firms,—as to which point the court *179 expressed strong doubt,—the case was one eminently proper for a voluntary agreement; and that, as there was no evidence of fraud in this case, the action would lie. Sterne v. Goepp, 20 Hun, 396; affirmed, 84 N. Y. 641. See also Osment v. McElrath (Cal. 1886), 9 Pac. Rep. 731.
After an agreement had been made between the persons constituting a firm of lawyers that no new business should be received and the business of the firm should be closed up, a further agreement was entered into that in case of the death of either of the partners his heirs or personal representatives should receive a certain proportion of the fees in the cases which had been entrusted to the firm. It was objected to a decree obtained in an action brought by the executor of the deceased party to recover his share in the profits, that no compensation was allowed in it to the survivors for carrying on the unfinished business. Held, that though there might possibly be a reason for not applying the general rule to a partnership between lawyers, yet in this case the parties themselves having made arrangements for the division of profits of the unfinished cases, this agreement clearly showed the intention that no further allowance should be made for closing up the business. Denver v. Roane, 99 U, S. 355. Compare Arundell v. Bell, 52 L. J. Ch. N. S. 537.
See, to the effect that the executor of a surviving partner is bound to settle the partnership estate, but that the rule that a surviving partner is not entitled to compensation for such services out of the partnership assets, does not apply to his executor, who is entitled to the compensation of a trustee,—Dayton v. Bartlett, 38 Ohio St. 357 (judgment reversed for refusing compensation).
II. General Liability oe Surviving Partner to Account.

A. In Courts of Equity.

If the survivor does not account within a reasonable time, equity will grant an injunction to prevent him from acting, and appoint a receiver. Nelson v. Hayner, 66 Ill. 487; Beale v. Beale (Ill. 1885), 2 Northeastern Rep. 65.
In an action brought by the representative of a deceased partner, held, that it is not necessary to allege that there is anything due to the executor. His right to an accounting results from the interest in the effects of the firm and the liability of the estate of the deceased partner to contribute to make good any deficiency there may be after the partnership property is appropriated to the payment of the debts. Cheeseman v. Wiggins, 1 Supm. Ct. (T. & C.) 595. See Skidmore v. Collier, 8 Hun, 50, 54. .
*180 See, to the effect that a demand by the executor is not necessary where debts have all been paid, ■—Anderson v. Ackermann, 88 Ind. 481.
In an action between an executor and a surviving partner, held proper to charge the surviving partner with a note due to intestate if it appeared that it grew out of the business of the partnership. Royster v. Johnson, 73 N. C. 474.
It is competent for the representative of a deceased partner and the surviving partner to settle and adjust the partnership affairs without an accounting or resort to legal proceedings. Such a settlement, in the absence of fraud, is binding not only upon the parties to it, but also on the general creditors of the deceased partner. This rule was applied where the person who had bought the interest of a deceased partner at an execution sale, brought 'an action for a new accounting, though the settlement between the representative of the deceased and the surviving partner had been made after a levy was made, but where the execution of the writ had been unreasonably delayed. The execution creditor could claim no greater charge than the general creditors, and was bound by the accounting. Sage v. Woodin, 66 N. Y. 578: compare Eldred v. Warner, 1 Ariz. 175.
See, to the effect that an action asking to have a trust fastened on land purchased with partnership assets is an action on a “ money demand ” within the statute of Alabama, and is barred by the time prescribed for such actions, Morgan v. Morgan, 68 Ala. 80.
An allegation in a complaint by a surviving partner against the estate of a deceased partner, where the partnership estate is insolvent, that he has paid out of the assets all the debts except a certain sum, and that he has “assumed the payment of that sum,” is not equivalent to an allegation that he has paid the money himself, and does not entitle him to receive half of the amount ‘from the estate of the deceased. Huff v. Lutz, 87 Ind. 471.
Where a surviving partner in good faith, but unsuccessfully, had resisted the payment of a partnership debt,-—Held, that the estate of the deceased was bound to contribute its share to the expense of the litigation. Lee v. Dolan, 39 N. J. Eq. 193. See Allen v. Blanchard, 9 Cow. 631. See, for a case where the reopening of an account rendered was refused, Groenendyke v. Coffeen, 109 IIll. 325.
See, on the point from what time interest is due from surviving partner, Sanderson v. Sanderson, 20 Fla. 292.
As to necessary parties, see Perrin v. Lepper, 26 Fed. Rep, 545.

*181
B. In Surrogate's Courts, when Surviving Partner is also Executor or Administrator of Deceased Party.

Where an administratrix of a deceased partner brought an action against the executor of the person who had been surviving partner to compel payment, out of partnership assets, of a claim arising out of partnership transactions,—Held, that, till an accounting was had before a court of equity, it was impossible for the surrogate to pronounce the representative of the surviving partner to be in possession of copartnership assets. The court refers with approval to the existing practice in accounting as to the estate of a deceased partner, and says that it is enough, merely to note generally the copartnership interest as an unascertained balance. Thomson v. Thomson, 1 Bradf. 24.
Where the deceased had appointed his partner his executor, an application was made to the a surrogate to compel the filing of an inventory and the executor to give security, on the ground of his precarious circumstances, and on this application a motion was made to compel the production of partnership books to establish various charges,—Held, that though in a proper proceeding the production of books might be ordered, yet that an executor as survivor was primarily trustee for the creditors of the firm; and that he as such was entitled to possession of the books; and that, therefore, the court would not order their production in such proceeding. Waring v. Waring, 1 Redf. 205.
Where the legatee of a deceased partner asked for an accounting against the executor in the surrogate’s court, the executor being also surviving partner, —Held, that an order of the surrogate compelling him to produce books and papers to show the account of the deceased partner was proper, though the estate was entirely unliquidated. The court held that the order was not made for the purpose of liquidating the partnership, but merely to ascertain what amount of the assets had been collected for the benefit of the estate. Woodruff v. Woodruff, 17 Abb. Pr. 165, cited in In re Stouvenel, Tucker, 241, 242.
See, for a case where jurisdiction was held to have been conferred on the probate court by acquiescence, Brown’s Appeal, 89 Penn. St. 139.
It was held in Hutton v. Laws, 55 Iowa, 710 (in a case where the surviving partner was also administrator of the deceased), that the heirs of a deceased partner cannot bring an action for an accounting in a court of equity as long as the estate is in probate. The proper way was to apply for a removal of the surviving partner as adminis *182 trator, and to have a new administrator appointed who would bring an action against the surviving partner in a court of equity.
Statutory provisions of the State by which probate courts are given power to marshal assets of the estates of deceased partners, and generally to regulate the distribution of the proceeds of partnership property, cannot deprive federal courts sitting in equity of their inherent equity jurisdiction on this subject. In Fisk v. Gould (below cited) a partnership had consisted of two persons, who had both died, and administrators were appointed. The bill charged that the estates of both were insolvent; that the partnership assets had come to the hands of the executors, and that they treated them as individual assets, though the partnership assets were sufficient to pay all partnership debts. The court held that this made out a case for equitable Interference, and that it was not necessary to obtain judgment before resorting to a court of equity. Fiske v. Gould, 12 Fed. Rep. 372; see also Collier v. Cairns, 6 Me. App. 188.
See, for a case where re-opening of account was refused, Blake v. Ward, 137 Mass. 94.
See, for a case on the general relation between probate courts and courts of equity, Chipman v. Montgomery, 63 N. Y. 221.
in. Consequences on Continuing Business by the Surviving Partner without Consent op Deceased.

A. Relations between the Surviving Partner and the Estate of the Deceased.

In an action by the personal representative where the business had been continued without any instructions from the deceased,—Eeld, that he may elect to sue for profits or for interest on the assets employed. Brown’s Appeal, 89 Penn. St. 139; Moore v. Huntington, 17 Wall. 417; Hay’s Appeal, 91 Pa. St. 265.
Where the executors sold the interest in certain patents held by the firm, at a time when large contracts in which these patents were to be used were outstanding, which contracts derived their principal value from said patents,—Meld, that, though no specific reference had been made to these contracts, they were not entitled to any credit on profits made by such firm on the contracts. Collender v. Phelan, 79 N. Y. 366; see also, Ambler v. Bolton, 41 L. J. Ch. N. S. 783; McClean v. Kennard, 9 L. R. Ch. App. 342.
It is the right of the representatives of a deceased or bankrupt partner to share in the profits of all business unfinished at the dissolution, but completed afterwards. King v. Leighton, 100 N. Y. 386; rev’g 22 Hun, 419.
*183 While negotiations about the mode of settling accounts between the survivor and the representative of the deceased were pending, the business (hotel) was carried on by the former. The lease under which the partnership held possession of the premises in which the business was carried on had expired before the dissolution, but they continued in possession. Negotiations were made during the same time for a new lease, on the basis that it would inure to the benefit of the partnership if continued. But the partner charged with the negotiations also stipulated that it should be renewed in his favor if the firm should be dissolved in any way. After the death a lease was made to him. The furniture was used in the business, though the representative protested against such use, but at the same time enjoined the surviving partner from removing it, on the ground that its value depended on it being used in connection with the house which it was claimed the survivor held as trustee for the representative of the deceased. In an action by the representative to make the survivor account for the profits, the lease and the good-will,—Held, that there was no principle which prohibited the taking of the lease in his own name (distinguishing Mitchell v. Read, 61 N. Y. 123; S. C., 84 N. Y. 556),* on the ground that there had been no secret or underhand dealings in opposition to the interest of the partnership, and there was no liability to account for the profits made by the use of the furniture, as a distribution of it had been prevented by an injunction. The survivor was held liable for the deterioration, with interest on the amount. Chittenden v. Witbeck, 50 Mich, 401. The injunction in this case was afterwards dissolved. See Witbeck v. Chittenden, 50 Mich. 426. See'also Demarest v. Rutan (N. J. 1885), 2 Atl. Rep. 647.
An absolute contract existed that on the death of one of the partners the others should take his share at a valuation, according to certain methods, but no time for payment was prescribed. One partner had appointed his copartner his executor. When the share was ascertained, it was credited to the legatees with interest, but not paid out, and the business was continued. In an action brought by one of the legatees for an accounting of all profits, subject to the discretion of the court, after accounts taken, to state hew much he would be entitled to,—Held, that the action could not be maintained, as the executor had simply fulfilled the contract obligation. Vyse v. Foster, 44 L. J. Ch. N. S. 37.
It was held, in Hooley v. Gieve, 9 Abb. N. C. S, that as between the representative of deceased and the surviving partner who has used *184 assets of the firm in the business and has wasted part of them, the former is entitled to recover the full amount of his share of the partnership assets from the latter, though in doing so some of the assets belonging to the surviving partner individually, which he himself undistinguishably mingled with the partnership assets, are taken.
It was held in McGinty v. Flannagan, 106 U. S. 661, that a charge to a jury to the effect that if a surviving partner mingled partnership goods with other goods belonging to him, so that they could not be identified, he thereby rendered his own property liable for the debts of the firm, was erroneous; that even if the specific goods were not separable, equity would divide it as to value between the parties beneficially interested.
The deceased was a member of two partnerships, between whom . existed a contract that one firm should purchase lumber and the other manufacture it. The surviving partner, believing in good faith that he was bound to carry out the contract, purchased lumber and paid for it out of firm assets and stored it with other lumber belonging to the partnership. All the lumber was burned. In an action for an accounting, the lower court held that the acts amounted to a conversion of the whole by the surviving partner, and that he was liable for all the lumber burned. On appeal it was held, that he having acted in good faith, the estate must bear the loss of half the lumber burned, which belonged to the partnership before dissolution, unless the whole had been undistinguishably mingled. Oliver v. Forrester, 96 Ill. 315. See Tompkins v. Tompkins, 18 S. C. 1; Ayres v. C., R. I. & P. R. R. Co., 52 Iowa, 478.
Partners had carried on a business with unequal capital but under partnership articles providing for an equal division of profits. After the death of one, the survivor went on without the consent of the executor of the deceased. In an action for an accounting as to the profits,—Held, that no reference could be made to the partnership articles, but, after deducting a proper charge for the management, the division must be made in proportion to the amount of the capital of the members of the firm. Yates v. Finn, L. R. 13 Ch. Div. 839.
As to the respective rights of the surviving partner and the estate of the deceased, to the good-will of the business, confusion may be avoided by observing the distinction made in Morgan v. Schuyler, 79 N. Y. 490 (see Hegeman v. Hegeman, 8 Daly, 1), between the good-will which results from occupation of certain premises and the good-will which is connected with the use of the name of the firm. While the cases agree that the former is an ordinary partnership asset, there has been some difference as to the latter. It has been held in tiiis State that the latter good-will does not survive the dissolution *185 of the firm. Howe v. Searing, 10 Abb. Pr. 264; S. C., 19 How. Pr. 14; Smith v. Everett, 27 Beav. 446, and see for a discussion of the subject, Sebastian's Law of Trade-marks, ch. 9.
The decision in Howe v. Searing was principally based on the statute (L. 1883, c. 281), which prohibited the use of the name of a person not actually interested in the firm as a partner.
Since Howe v. Searing was decided, several new statutes limiting tlie provisions of the statute of 1888 have been passed, and the operation of other statutes containing limitations, which existed at the time have been extended. L. 1863, c. 144; L. 1880, c. 561; amended by L. 1881, c. 389. The latter act expressly provides that where the business has been conducted in the sole name of the deceased, the right to use such name of such deceased shall survive and shall form a part of his estate. The former statute does not contain such a provision, and the question still remains, whether, if the surviving partner has made use of the right conferred upon him by that statute to use the name of the dissolved firm for the future, he must account for the value of the use of such name.
See, for a recent decision on this subject under the Massachusetts statutes, which forbid the use of the name without consent of the representatives of the deceased, Lodge v. Weld, 139 Mass. 499; S. C., 2 Northeastern Rep. 95 ; see also Rammelsberg v. Mitchell, 29 Ohio St. 22.
See, to the effect that each partner has the right, in the absence of a provision to the contrary, to use the trade-marks of the firm, on dissolution generally of such firm, and that the statute of 1803 does not affect the right of partners inter sese, Hazard v. Caswell, 93 N. Y. 259.
The use of the name of the deceas'd partner, without complying with the provisions of the statute quoted (act of 1880), is a violation of the statute of 1833, even if the business is continued under the provisions of his will. Lane v. Arnold, 13 Abb. N. C. 73. Compare Arnstaedt v. Blumenfeld, N. Y. Daily Reg. June 17, 1884.

B. Relative Rights of the Estate of Deceased and Subsequent Creditors.

It was held in Hoolcy v. Grieve, 9 Abb. N. C. 8, per Van Brunt, J., where two of the trustees and executors of the deceased, who at the same time were the surviving partners, had continued the business of the firm against the instructions of the deceased, for their own benefit,—that the right of the estate to the partnership assets was superior to that of the subsequent creditors. The latter have not, before levy of execution or attachment, any claim upon the property *186 of the original firm or its avails as against those interested in the estate of the deceased partner. It was held in the same case, that the obtaining of a judgment by a subsequent creditor does not give him a lieu on the fund, and his rights are subsequent to those of the receiver appointed at the instance of the remaining executors and the beneficiaries under the will. As to the first point, see, however, Payne v. Hornby, 25 Beav. 280, where the court held that it is the duty of the executor to apply at once, if the business is carried on by the surviving partner, for the appointment of a receiver, and if this is not done, even the beginning of an action for an accounting will not prevent the rights of the subsequent creditors from being superior to his own. The case in Beavan was approved by the supreme court of the United States, in Hoyt v. Spragne, 103 U. S. 613, although the exact point was not before the court. In that case, an action was brought by the grandchildren of a deceased partner to have a lien declared in their favor on all the property in the hands of the person to whom the surviving partner had made a general assignment for the benefit of creditors. It appeared that, after the death of the deceased, the business had been carried on with the consent of the administratrix, the plaintiffs in the present suit being then under age. It was held that the lien on the partnership property exists primarily in favor of the administrator, and that the ultimate beneficiary can only reach the property through him ; that, by consenting to the continuation of the business, the lien was lost as against subsequent creditors, and could not afterwards be revived in favor of the infants after they came of age. The claims of the beneficiaries were held not to be entitled to be paid either in preference to or even pari pasm with the claims of the creditors.
A partner held a mortgage as trustee for the firm to secure certain indebtedness after his death. The business was continued by the surviving partner, trustee of the deceased, under the same name. A verbal agreement was made thatr the mortgage should cover future indebtedness of the firm. The debtor contracted new obligations and paid off an amount nearly equal to the new obligations contracted.
In an action brought by the administrator of the deceased (it was conceded that if there was a lien he could bring an action to foreclose the mortgage),—Held, that though the business had been continued under the old name, there was in reality a new firm, and that the verbal agreement was void under the statute of frauds; that there was no continuous account, and that payments were not made to the surviving partner as such, but for the new debts incurred; that the old debt remained valid for the full amount. The court quotes Hooley v. Gieve, and intimates that the subsequent creditor is in every case *187 chargeable with notice of the rights of the estate of the deceaseds Taylor v. Post, 30 Hun, 446. See also, as to this last point, In re Clap, 2 Low. Dec. 168, 173.

C. The liability of the Executor who consents to the Continuation of Business.

The executors allowed the surviving partners to go on and sell the stock in the usual course of business without asking previous consent of the court. It was held, that though they might be liable to new creditors individually as partners, they were not individually responsible to partnership creditors for losses suffered, as they had acted in good faith, that it would be different if they put into the hands of the surviving partner the assets belonging to the estate in order to deal with them. Thompson v. Brown, 4 Johns. Ch. 619; approved in Mills v. Hoffman, 26 Hun, 594. See also, Montgomery v. Dunning, 2 Bradf. 220.
In an action by a creditor to make an executor personally liable for the debt contracted by the surviving partner, it was held that, while it is well settled that an executor who allows the continuation of the business, either for his own benefit or for the estate, becomes personally liable, yet such liability is not imposed where no. agreement is shown, and the executor requested the withdrawal of assets, and such distribution was postponed under various pretexts by the surviving partner. Avery v. Myers, 60 Miss. 367.
IV. Continuing Business with the Consent op Deceased.

A. General Validity and Effect of such a Provision.

In National Bank of Newburgh 8. Bigler, 83 S. T. 51, 57, the court expresses a doubt whether a provision in the partnership articles that the surviving partner shall continue to carry on the business for the benefit of both parties until a certain date could have any legal effect whatever. Under the view the court took of the case (see infra), it was not necessary to decide the point. See also Matteson v. Nathanson, 38 Mich. 377.
The validity of a similar agreement was sustained by the supreme court of Pennsylvania in Leaf’s Appeal (Chicago Leg. Adv. Jan. 6, 1885), in an action brought to determine the validity oí a decree by which payment of the profits was ordered to the representative of the deceased by virtue of a provision that the business should not be considered discontinued.
In Phillips v. Blatchford, 137 Mass. 510, a provision was inserted in the partnership articles, that the partnership should not be dissolved, *188 and that the executor should succeed to the right of the deceased. It was held that the executor was liable to contribute to the copartners for debts incurred since the decease even before the executor had done any act towards taking the place of the deceased in the firm. The court distinguished between the liability to creditors and the liability to partners which would be the consequence of such a provision, intimating that as to the former case there might be some difficulty in showing “how a contract could be made with a dead man,” or how, unless the executor acted on the provision in the partnership articles, the estate could be liable to creditors, but stating that the liability to the partners was incurred by virtue of the partnership contract. Compare Blodgett v. American Nat’l Bank, 49 Conn. 9.
It would seem that the doctrine in the Massachusetts case must be considered in .connection with the rule of law in that State, that a third person cannot sue at law on a contract made for his benefit.
A provision in a will directing the carrying on of business by the surviving partner does not authorize any contract which could not have been made during the existence of the partnership, and such contract (in this case a lease to a third person) will be set aside at the instance of the representative of the deceased partner. Berry v. Folkes, 60 Miss. 576.
In National Bank of Newburgh v. Bigler, 83 N. Y. 51, where a foreclosure action was brought by the assignee of a mortgage executed to a firm to secure it against losses suffered by indorsing the paper of the maker of the mortgage, it appeared that certain of the notes had been renewed by the survivor. The court held that if the right of the plaintiff depended on the right of the survivor to execute accommodation indorsements or even to give accommodation notes in renewal of existing indebtedness, the action could not be maintained, notwithstanding the provision in the partnership articles that the business should be continued by the survivor. The court sustained the right of the plaintiff, on the ground that it appeared from the facts, that the intention of all parties at the time that the new notes were executed was that the original indebtedness should remain.
A testator authorized trustees to carry on the business and invest as much as necessary. The profits were by the will given to his daughter; upon her death, the amount was given to other parties. The first year there was a loss, the second year a large profit. The question before the court was whether the whole of the profits of the second year were to be given to the daughter, or a deduction was to be made to cover the loss. It was held, that as it was proved to be customary during the life of the deceased, to charge off on capital the loss suffered each jeer, and distribute the whole of the profits whenever they we.re *189 made, the same course had to be pursued now, and the daughter was entitled to the whole. Gow v. Forster, L. R. 26 Ch. Div. 672.
Where four partners covenanted with each other that, in the case of the death of any one, the others should pay over his share of the capital in annual installments, unless they preferred to do so earlier, and one died, and Iris representatives brought suit to ascertain the amount; and after accounting and a decree for annual installments and payment of some of them, two other partners died, and the sole survivor became bankrupt,-—Held, that the obligation was several as well as joint,—not merely joint, because in equity a partnership debt on a consideration moving to the partnership is joint and several; and that the representative of the first deceased could have recourse against the estates of the second and third. Beresford v. Browning, L. R. 20 Eq. Cas. 564, 571; see same case on appeal, L. R. 1 Ch, Div. 30.
See, to the effect that the general rule that the partnership is dissolved by the death of any of the partners does not apply to mining partnerships, even without any special provision to that effect, Jones v. Clark, 42 Gal. 180.
See, to the effect that the question whether the intention of the parties is that the partnership should be continued is a question for the jury, McNeish v. Hulless Oat Co., 57 Vt. 316; abstr. S. C., 21 Cent. L. J. 262.

B. When General Assets are not Liable.

A partner died leaving a will by which he left his interest iu the firm to his copartner in trust for other persons. He made him also his executor, and made a request that his interest should be retained as long as his copartner should deem it advisable. Among the assets of the deceased, not partnership assets, were notes payable to him individually, but held by him in reality as executor for another person. The surviving partner pledged these for a debt of the firm. In an action brought by the administrator de bonis non on behalf of the estate to whom the notes really belonged, asking for a re-delivery of the notes, the court held that, even assuming that the pledgee had the right to consider the notes as belonging to the deceased individually, and not as executor, the pledgee was chargeable with notice that the pledging by the executor of the assets of an estate to secure a loan for the business of a commercial house was a misuse of them, unless there were explicit directions to that effect in the will of the testator. The court quoted with approval the words of Justice Story in Bur-well v. Mandeville, 2 How. (U. S.) 560, that nothing but the most *190 clear and unambiguous language would have the effect of making the general assets, and not merely the fund embarked in the trade, liable. Smith v. Ayer, 101 U. S. 320.
In an action by a creditor to apply general assets to debts, and compel the refunding of profits made between the death and the failure of the firm, the court re-affirmed Smith v. Ayer, especially as in the case before it, the testator had expressly provided that the general assets should not be liable, and held, moreover, that profits which had been made and distributed according to the provisions of the will, were not to be returned, as such a provision was reasonable, and there was no principle compelling the reinvestment of all profits as capital. Jones v. Walker, 103 U. S. 444. See also In re Clap, 3 Low. 168.
Where a partnership creditor sought to apply the general assets of a deceased partner to the payment of his debt, alleging that the partnership articles provided for the continuance of the business after the death of any of the partners, and that the deceased had given instructions to that effect in his will, the court held that the provision in the partnership articles that “in the event of the death of either party to this agreement, this copartnership shall not on that account be dissolved, but the interest of such deceased party may be continued and represented by the legal representative of said deceased party,” did not make such continuation mandatory so that it could be enforced without reference to any provision of the will. It also held that a provision in the will of the deceased, directing that his share in the partnership should not be determined, but be kept up until, in the judgment of his executor, it should be more advantageous to sell out and settle up, did not authorize the employment in- the business of more of the assets than were embarked in the business when he died, and did not subject his general assets to the claims of creditors; nor did the fact that the general estate had received large profits from other business partnerships of which deceased had been a member, extend the rights of creditors of those partnerships. Cook v. Administrator of Rogers, 3 Fep. Rep. 69. See also Exchange Bank v. Tracy, 77 Mo. 594.

C. When General Assets are Liable.

In partnership articles, it was provided that the death of one partner “ shall not dissolve the partnership, but his executor shall go in his stead.” One partner died, and left a will in which he left all his estate in trust to his executor to divide the income, but made no reference to the partnership. The business was subsequently continued by the other partners and the estate of the deceased: such facts *191 were known to all persons, who were beneficiaries under the will The court held that the general assets were liable for debts contracted, after the death of the partner. The obligation was imposed upon the estate by the contract of partnership, and by no act testamentary or otherwise could the right of those who upon the faith of this contract trusted the estate be diminished; and where, therefore, assets to a larger amount than were invested at the time of the death, had been pledged for debts subsequently incurred, it was held that no bill by a legatee for a re-transfer could be entertained. Blodgett v. American Nat’l Bank, 49 Conn. 9.
V. Bights of Partnership Creditors against the Assets of the Partnership.
See, as to this point, also the cases referred to under III. B.
In a proceeding in bankruptcy for marshaling the assets, brought by a creditor of a partnership of which the bankrupt was surviving partner while he was also the executor of the deceased, it was held that the right of the representatives of the deceased to compel partnership assets to be devoted to partnership liabilities, passed on his bankruptcy to the partnership creditors. In re Clap, 2 Low. 168.
A partnership creditor applied for a writ of attachment against the surviving partner on the theory that he had wrongfully disposed of partnership assets to pay individual debts. It was admitted that the dissolved firm had been insolvent during the terms of its existence. The contention of the defendant was that as surviving partner, being pressed for money, he had executed his own note, paid partnership debts with proceeds, and had afterwards transferred partnership assets to secure the note. The court below charged that any appropriation of any partnership assets to payment of an individual debt was a fraud on the partnership creditors, whether it was so intended or not. On appeal it was held that the charge was erroneous; that under it the defendant would be liable even if he were in possession as surviving partner with the assent either expressed or tacit of the personal representatives of the deceased copartner for the purpose of continuing the business, and that in such case the disposition made would have been perfectly proper. The court further said that the lien of the partnership creditor is derived through that of the partner himself, and is lost by any acts through which that right to have the partnership assets applied to the payment of partnership obligations, is lost. The court seemed to consider that the only way to prevent the presumption of such assent is to begin a suit and have the property brought in emtodiam legis, and quoted to this effect Locke v. Lewis (124 Mass. 1), where one partner had been left in possession after *192 dissolution by consent, thus extending -the principle laid down in that decision to the case of a surviving partner, where partnership is dissolved by death. Fitzpatrick v. Flannagan, 106 U. S. 648. See also Roach v. Brannon, 57 Miss. 490.
See, for a case where this principle was applied, where the surviving partner was also the executor of deceased, Strauss v. Frederick, 91 N. C. 121. And for a case where partnership assets had been given to the executor by the surviving partner before all debts of the partnership were paid, Gwynne v. Estes, 14 Lea (Tenn.) 662, 676.
See, to the effect that the court in such a suit brought by a partnership creditor, will not appoint the surviving partner as a receiver if he has transferred assets to another firm of which he was a member, Young v. Buckett, 46 L. T. R. N. S. 266.
The creditor of a partnership, wbeu all the partners have died, can procure an order compelling the executor of the surviving partner to sell the real estate when the personal assets are insufficient to pay partnership debts. Bridge v. Swnin, 3 Redf. 487.
See, to the effect that an equitable interest of a partnership in land under a contract to convey, is subject to partnership debts, McCaskill v. Lancashire, 83 N. C. 393.
See, to the effect that statute of limitations continues to run in favor of the surviving partner, and that, if the right of action against him is lost, this will discharge the estate of the deceased partner, McNaught v. Bostwick, 71 Ga. 782.
VI. Rights of Partnership Creditors against the Estate of the Deceased.

A. In general.

It is settled in England that the creditor of a partnership can bring an action in equity against the estate of the deceased, without any allegation that the surviving partners are insolvent, and without exhausting his remedy against them. Devaynes v. Noble, 1 Meriv. 503; Wilkinson v. Henderson, 1 M. & K. 582.
It has often been attempted to explain this exception to the general rule in the case of joint debts, by saying that equity considers ■ partnership debts several as well as joint. This point was discussed in Kendall v. Hamilton, L. R. 3 C. P. D. 403, affirmed L. R. 4 App. Cases, 504, where the question before the court was whether, whore a judgment had been recovered against two members of a partnership, such a judgment was, even without satisfaction, a bar to a suit against the third partner. It was attempted to deny that it was a bar, on the ground that equity had always considered partnership debts several *193 as well as joint, and that, since the judicature acts, the same principle was applicable in a court of law. The court held that the judgment was a bar, and put its decision principally on the ground that even in equity a general rule such as was claimed to exist, had never been recognized,* and quotes with approval the words of Lord Justice James in Beresford v. Browning, L. R. 1 Ch. D. 30, that the real reason of the right given in courts of equity to the partnership creditor to sue at once the estate of the deceased, is not that the debt is several as well as joint, but that “ where there is in equity no survivorship of property, there is in equity no survivorship of liability.”
The court acted on the views expressed in Kendall v. Hamilton, in In re McRae, L. R. 25 Ch. Div. 16.
A partnership creditor brought a so-called administration action,— that is a bill on behalf of himself and all the other creditors,—for the appointment of a receiver and for the administration of the estate of the deceased. Afterward a separate creditor filed a bill to the same effect. The court refused to apply the usual rule that the control of a second suit is given to the person who has brought the first suit, on the ground that the partnership creditor was neither a separate creditor at law nor in equity; and, though he might bring a suit against the representative of the deceased partner and the surviving partner, for the reasons stated in Kendall v. Hamilton, he had no locus standi in such an action. In re McRae (supra.)
In Mew York the English rule is not followed; Lawrence v. Trustees of Orphan House, 2 Den. 577, 582.
An allegation in a complaint of a creditor of a partnership against the estate of the deceased partner, 11 that a judgment against the surviving partner has been recovered, and execution returned unsatisfied ” is sufficient, and it is not necessary to show that he is actually insolvent. This rule was applied, though it was shown that the survivor had property which could have been levied upon, and which the sheriff liad not found. The theory on which equity proceeds in this case, as in the case of all joint debtors, is that the estate of the deceased is liable in equity, but as a creditor lias a remedy at law against the survivor, the court will interfere when, but not before, *194 sucli legal remedy is exhausted. Pope v. Cole, 55 N. Y. 124. See, to same effect, Yates v. Hoffman, 5 Hun, 113 ; First Nat’l Bk. of Chittenango v. Morgan, 73 N. Y. 593.
The New York rule is adopted in the Federal courts in this distiict.
An action was brought against three partners; one died leaving an executor; a bill of revivor was brought against him. The court held that in the absence of all allegations of insolvency of the surviving partners, the suit did not abate and could not be revived as against the executor. Troy Iron & Nail Factory v. Winslow, 11 Blatchf. 513, and in New Jersey, in Buckingham v. Ludlum, 37 N. J. Eq. 137.
The English doctrine was recently followed and approved in Doggett v. Dill, 108 Ill. 560, where the principal cases in this country are reviewed.
In Wisconsin, it was held that where one of the partners died during the pendency of a legal action by a creditor, and the administrator asked and obtained leave to litigate, this was a waiver of the equitable forum. At the same time, the court held that such it waiver did not take away the duty of the creditor to allege and prove that the survivors were insolvent. Sherman v. Kreul, 42 Wis. 33.
See, to the effect that partnership creditors are not. entitled to payment out of the estate of the deceased till all the individual creditors have been paid, the cases collected in a note in Morgan v. Skidmore, 3 Abb. N. C. 92.
This point is also decided in the same way in cases which follow the English doctrine (Doggett v. Dill, 108 Ill. 560), and very recently also in England. Breckett v. Ramsdale, L. R. 31 Ch. Div. 177.
An exception to the rule is favored in some cases, viz : that where there are no joint assets at all, the partnership creditors come in pari passu with individual creditors; but it is uot favored by the current of authority in this country. See Weyer v. Thornburgh, 15 Ind. 124; Murrill v. Neill, 8 How. 414; Bake v. Smiley, 84 Ind. 212; but see Higgins v. Rector, 47 Tex. 371.; Emanuel v. Bird, 19 Ala. 596; Pahlman v. Graves, 26 Ill. 405.
In Warren v. Farmer, 100 Ind. 593, the general rule as to marshaling of assets was recently reaffirmed, although, under the circumstances existing in that case, it was held that the partnership creditors came in. pari pasiu with individual creditors. One partner had bought out the entire interest of his copartner, assuming, as part of the consideration, payment of the partnership debts. It was held, that by this arrangement, the partnership property became his individual property, and the partnership debts his individual debts.

*195
B. What is and what is not Considered a Release of the Estate of Deceased.

An action was brought by a creditor of a firm against the administrator of a deceased party alleging the insolvency of their partners. The defense was, that he had made an agreement with the survivors whereby the money due to the plaintiffs was contributed by him. as capital to the copartnership newly formed by said survivors.
It was held that this defense, if established, was valid, but that such a contract must be proved affirmatively, and could not be inferred from the fact that the creditor dealt exclusively with the survivors, and recognized them as his debtors. He could do so, as they were his exclusive debtors at law and his primary debtors in equity, without in any way relinquishing the secondary liability of the deceased partner. Fogarty v. Cullen, 49 Super. Ct. (J. & S.) 397.
A partnership was dissolved by agreement; one of the partners was to settle the affairs. Shortly afterwards, the other partner died; one of the creditors thereafter accepted a note signed by the other partner. On his insolvency, he brought an action against the estate of the deceased. It was held that the acceptance of the note under these circumstances did not indicate any intention to release the estate of the deceased. Titus v. Todd, 25 N. J. Eq. 458. Comp. Fowlkes v. Bowers, 11 Lea (Tenn.) 144. See also, Harris v. Lindsay, 4 Wash. C. C. 98.
A firm consisting of two partners was in the habit of issuing deposit notes. They took in afterwards two new partners. One of the old members of the firm died. The business was advertised to be continued under the old name. The other old partner died also, and the business was carried on by the new partners. The firm went into bankruptcy; all holders of notes proved their claim in no other proceeding but in the bankruptcy proceeding. "When, afterwards, an action was begun to settle the estate of the partner who first died, the holders of notes asked to be admitted as creditors. They were all holders of notes at the time the testator died, and had all received interest from the new partners. They all knew of the death of the testator and had never before made a claim, but some had not altered the amount after deposit, others had increased it and had received new deposit notes from the new partners, others had diminished it and had also received new notes. It was held that as to all the claims, the acceptance of interest by the new partners worked a complete novation and released the estate of the old partners. Bilborough v. Holmes, L. R. 5 Ch. D. 255.
*196 The difference already adverted to as to the rights of the partnership creditors against the estate of the deceased between the courts of New York and England explains the different results to which those courts came in the cases just mentioned.
See, to the effect that where a person has been induced to trust a copartnership by the fraudulent representation of one of the partners who subsequently died, a judgment without satisfaction recovered after the death of such partner against the firm, is no bar to an action for the deficiency against the estate of the deceased on the individual liability incurred by the fraud,—Morgan v. Skidmore, 3 Abb. N. C. 92.
VII. Right oe Representative oe Deceased Partner against Partnership Debtors.
An action was brought by the executor of a deceased .partner to recover the share of such partner of a partnership claim. The surviving partners were made defendants; he (the executor) also alleged that such partners refused “to join as complainants therein.” It was held that the bill was demurrable, because the claim was a joint claim, and could not be split up in several suits; that the surviving partners, therefore, properly refused to join the plaintiffs in their action, and that, therefore, even if an executor could be allowed to sue where surviving partners refused to do so, the complainant had not brought his case with this principle. Kirby v. Lake Shore & Mich. R. R. Co., 8 Fed. Rep. 463.
But when the executor afterwards' brought an action for an accounting against the partnership debtor, alleging that the oilier defendants refused to sue, a demurrer to his bill was overruled. Kirby v. Lake Shore & Mich. R. R., 14 Fed. Rep. 261.

 Reported in 36 Hun, 327.

 Larremore, Daly and Van Hoesen, JJ.

See, as to this point, also, Bird v. Bird, 77 Me. 499; S. C., 1 All. Rep. 455.

 See this case, and others to the same effect, stated in 16 Abb. N. C. 385, note.

 See, to the same effect, Exchange Bank of Denver v. Ford (Coto. 1884), 8 Pac. Rep. 449-53; First Nat. Bank v. Tarbox, 38 Hun, 57. Compare § 1946, Code of Civ. Pro.; Decker v. Kitchen, 26 Hun, 173.
In Missouri and Alabama the partnership debts have been made joint and several by statute. See, for a decision as to the liability of the widow of deceased under Louisiana law, Henderson v. Wads-worth, 115 U. S. 264.